**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.:**

**DCSW GROUP LLC**
**D/B/A MIAMI SWIM WEEK,**

 Plaintiff,

v.

 **JURY TRIAL DEMANDED**

**FPM HOLDINGS LLC**
**D/B/A PARAISO MIAMI BEACH**
**A/K/A PARAISO**
**F/K/A FUNKSHION PRODUCTIONS LLC**
**F/K/A FUNKSHION LLC, and**

**FUNKSHION LABS LLC**
**A/K/A FUNKSHION**

 Defendants.
 _____/

**COMPLAINT**

COMES NOW **DCSW GROUP LLC** doing business as **MIAMI SWIM WEEK** ("**DCSW**"), by and through its attorneys, and for its Complaint against **FPM HOLDINGS LLC** doing business as **PARAISO MIAMI BEACH** also known as **PARAISO** formerly known as **FUNKSHION PRODUCTIONS LLC** and formerly known as **FUNKSHION LLC** ("**Paraiso**") and **FUNKSHION LABS LLC** also known as **FUNKSHION** ("**Funkshion**"), and states and alleges as follows:

**NATURE OF ACTION**

1. This is an action for trademark infringement, false designation of origin, and false description and representation arising under *15 U.S.C. § 1114, 15 U.S.C. § 1125(a)(1)(A), and 15*

1

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

*U.S.C. § 1125(a)(1)(B)*.  This is also an action for declaratory judgment as to ownership of the MIAMI SWIM WEEK service mark and cancellation of Paraiso's Miami Swim Week and Miami Swim Fashion Week service mark applications in the United States Patent and Trademark Office ("**USPTO**").  This is also an action pursuant to 15 U.S.C. § 1071(b)(1), seeking judicial *de novo* review of the United States Patent and Trademark Office's Trademark Trial and Appeal Board's ("**TTAB**") decision in *Funkshion Productions v. DCSW Group*, Cancellation Proceeding No. 92081190.

2.      DCSW seeks damages, attorneys' fees, costs, permanent injunctive relief, and declaratory relief. The amount in controversy, exclusive of costs and interest, exceeds Seventy-Five Thousand Dollars ($75,000.00).

## JURISDICTION AND VENUE

5.      This civil action arises under the laws of the United States and this Court has federal subject matter jurisdiction under *28 U.S.C. §§ 1331 and 1332*.  This Court has subject matter jurisdiction because this action arises under the Federal Trademark Act, as amended, *15 U.S.C. § 1051-1141* (the "**Lanham Act**") and jurisdiction is proper in accordance with *28 U.S.C. §§ 1121*, *1338(a) and (b)*, *2201*, and *2202* for declaratory judgment.  This is an action for judicial review of a final decision of the TTAB under § 21(b)(1) of the Lanham Act, 15 U.S.C. § 1071(b)(1).  15 U.S.C. §§ 1071(b) and 1121(a) provide that a party to a cancellation proceeding may have remedy by a civil action, and that a court may adjudge whether a registration should be canceled.

6.      Venue is proper in the Southern District of Florida  pursuant to 28 U.S.C. § 1391(b) in that Paraiso and Funkshion are limited liability companies with their substantial operations located in the Southern District of Florida, with sufficient contacts to be subject to personal jurisdiction in the Southern District of Florida at the time of this action, and therefore to be

considered as residing in this district. Venue is also proper because a substantial part of events involved in this action occurred in the Southern District of Florida, and the injury to DCSW from Paraiso and Funkshion's unlawful conduct arose in the Southern District of Florida.

## PARTIES

### DCSW

7.      DCSW is a limited liability company duly organized and existing under the laws of Florida.

8.      DCSW is the organizer and owner of **MIAMI SWIM WEEK®,** leading the way in curating and producing the most iconic fashion swimwear events and content in conjunction with its federally registered **MIAMI SWIM WEEK®** mark and its common law stylized design marks **MIAMI SWIM WEEK®** *THE SHOWS* and **DC SWIM WEEK** *THE SHOWS*.

9.      Moh Ducis, the visionary CEO of DCSW, is widely regarded for his groundbreaking multi-media approach to fashion events and substantial impact on the swimwear sector.  With over a decade of experience, he has revolutionized the way swimwear is presented through immersive multi-media experiences, from large-scale runway productions to curated designer showcases, showroom experiences for buyer-designer interactions, and interactive brand activations through his company's brands, **DC SWIM WEEK**, **DC SWIM WEEK** *THE SHOWS*, **MIAMI SWIM WEEK®,** *THE SHOWS*, and **MIAMI SWIM WEEK®** *THE SHOWS*.

10.     2020 marked the year of DCSW's first Miami Swim Week event and production of Miami Swim Week content.  From that point forward, DCSW has continued to invest substantial time and money into its **MIAMI SWIM WEEK®** brand.

11.     DCSW's influence continued to grow from 2022 to 2023, marked by two major milestones: (1) the acquisition of Hammock, a key tradeshow brand, which significantly expanded

3          *Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

DCSW's portfolio and industry presence in connection with its **MIAMI SWIM WEEK®** brand, and (2) its debut at New York Fashion Week ("*NYFW*"), where DCSW introduced its Spring/Summer shows, extending its influence beyond swimwear into the broader fashion world. These bold moves demonstrated DCSW's strategic expansion into major fashion capitals, further cementing its reputation as a fashion innovator. In fact, DCSW's **MIAMI SWIM WEEK®** 2022 event featured at least 59 designer shows over five days at the prestigious SLS venue in Miami, showcasing its growing significance on the global stage.

12.    On July 11, 2023, *Forbes* published an article stating, "Ducis has dedicated its business model to continue in the direction of uplifting brands in the niche market of ready-to-wear swim to levels of mainstream brands" (Ferere, 2023). That same year, DCSW Miami Swim Week produced over 50 designer shows in just five days at the renowned SLS venue in Miami, demonstrating its unmatched scale and impact on the swimwear industry. Ferere, C., *Miami Swim Week: The shows 2023 elevates swim and resort wear to new levels,* Forbes (July 11, 2023) available at: https://www.forbes.com/sites/cassellferere/2023/07/11/miami-swim-week-the-shows-2023-elevates-swim-and-resort-wear-to-new-levels/ (last accessed April 4, 2025).

13.    By 2024, DCSW continued to be a preeminent leader in the global swimwear and resort wear industry. Known for curating world-class runway shows featuring top-tier designers, luxury pop-ups, multi-media brand activations, and high-profile networking events, DCSW Miami Swim Week has solidified its reputation as a top-tier event in the fashion calendar.

9.    On June 6, 2024, *L'etage Magazine* acknowledged, "With over a decade of experience in producing fashion shows, Moh Ducis, founder of **MIAMI SWIM WEEK®** The Shows, has firmly established the event as the fastest-growing luxury fashion show production ecosystem" (L'etage Magazine, 2024). This recognition reinforces DCSW's dominance as the sole entity behind **MIAMI SWIM WEEK®**, highlighting

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

Ducis' and DCSW's role in shaping the event into the globally recognized fashion phenomenon it is today.. L'etage Magazine, **MIAMI SWIM WEEK®** *The Shows 2024: Highlights and trend summary,* L'etage Magazine (June 6, 2024) available at: https://letagemagazine.com/miami-swim-week-the-shows-2024-highlights-and-trend-summary/ (last accessed April 4, 2025).

10.     DCSW's branded **MIAMI SWIM WEEK®** events have been recognized all over the world in multiple publications over the past four years and its work has been publicly recognized by government officials in proclamations.

### Paraiso

11.     Defendant Paraiso, doing business under its registered name "Paraiso Miami Beach", and formerly known as Funkshion Productions LLC and Funkshion LLC, is a limited liability company organized and existing under the laws of Florida.

12.     Paraiso, under its registered name "Paraiso Miami Beach" or under Paraiso for short, produces runway fashion shows.

13.     Prior to doing business as "Paraiso Miami Beach", Paraiso was known as "Funkshion" and "Funkshion Productions".

14.     Upon information and belief, Paraiso's current representatives are Aleksander Stojanovic and his wife Natalija Dedic-Stojanovic.

15.     Upon information and belief, Paraiso is helmed by Aleksander Stojanovic and his wife Natalija Dedic-Stojanovic.

16.     According to the State of Florida's official website for the Florida Department of State Division of Corporations, Funkshion LLC was filed on February 23, 2009.  Aleksandar Stojanovic and Alain Perez were listed as managers of the company.

17.     According to the State of Florida's official website for the Florida Department of State Division of Corporations, Funkshion LLC was voluntarily dissolved on December 15, 2016.

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

18.     According to the State of Florida's official website for the Florida Department of State Division of Corporations, Funkshion Productions, LLC was filed on January 3, 2017 with an effective date of January 4, 2017.  Aleksandar Stojanovic and Alain Perez were listed as managers of the company.

19.     According to the State of Florida's official website for the Florida Department of State Division of Corporations, an amendment was filed on December 5, 2023, changing the company's name from Funkshion Productions, LLC to FPM Holdings, LLC.

**Funkshion**

20.     Defendant Funkshion is a foreign limited liability company organized and existing under the laws of Florida.

21.     Funkshion produces runway fashion shows.

22.     Upon information and belief, Funkshion's current representatives are Aleksander Stojanovic and his wife Natalija Dedic-Stojanovic.

23.     Upon information and belief, Funkshion is helmed by Aleksander Stojanovic and his wife Natalija Dedic-Stojanovic.

24.     According to the State of Florida's official website for the Florida Department of State Division of Corporations, Funkshion Labs LLC was filed on August 28, 2023.  Aleksandar Stojanovic with an address of 161 Crandon Blvd, #419, Key Biscayne, FL 33149 is listed as EVP Production and Events and Lagardere Labs, Inc. with an address of 177 Mott St., New York, NY 10012 is listed as Manager.

## FACTS

### DCSW's Rights In The MIAMI SWIM WEEK® Mark

25.     DCSW is the owner of the first user of **MIAMI SWIM WEEK®** mark as a source identifier and branded service mark.

26.     Prior to DCSW's first use of **MIAMI SWIM WEEK®** as a service mark, there was a coming together of multiple entities and individuals which commenced over 10 years ago to collectively participate in an event that evolved organically overtime, took place annually, and was described using multiple different phrases, including but not limited to Swim Week, Swim Week Miami, Fashion Week Swim, Fashion Week Miami, Miami Swim Week, and Miami's Swim Fashion Week, Miami's Swim Week.

27.     Miami Swim Week was never branded as its own by anyone until DCSW branded and used **MIAMI SWIM WEEK®** as a protected service mark.

28.     DCSW has substantially used its **MIAMI SWIM WEEK®** service mark with the ™ and ® symbols to indicate that it is DCSW's protected service mark and being used as a brand by DCSW.

29.     Prior to DCSW, no one, including Paraiso, used the ™ or ® symbols to advertise the mark **MIAMI SWIM WEEK** in connection with their services.

30.     DCSW has made significant time and financial investments to establish its **MIAMI SWIM WEEK®** as a premier brand within the fashion industry through substantial brand development activities such as use of the mark as a source indicator on its website and social media, press releases, video content titles, video content intros, video content watermarks, video content thumbnails, multimedia runway backdrops, step and repeats, signage, and other marketing materials to promote DCSW's entertainment services including lanyards, beach balls, bags, and fans.  See, e.g., **Composite Exhibit A**.

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

31.     DCSW's branded uses of its **MIAMI SWIM WEEK®** service mark are distinct and unique to DCSW's vision and efforts to create a conscious connection in the nationwide public's mind between the **MIAMI SWIM WEEK®** mark and DCSW's services.

32.     DCSW's substantial investment in the brand has not only positioned **MIAMI SWIM WEEK®** as a key branded series of multi-media content and events in the fashion calendar, but it has also continuously strengthened its brand recognition both in the U.S. and internationally.

33.     DCSW's consistent and intentional uses of its **MIAMI SWIM WEEK®** brand reinforces the recognition of the **MIAMI SWIM WEEK®** mark as a source identifier for DCSW's services, ensuring that designers, influencers, and the public understand that the mark is owned and used exclusively by DCSW in connection with the services it creates and executes.

**DCSW's Registration In The USPTO For MIAMI SWIM WEEK® Service Mark**

34.     On May 18, 2021, DCSW filed U.S. Application Serial No. 90/719,707 in the USPTO for its **MIAMI SWIM WEEK®** service mark in International Class 41 for Entertainment services in the nature of development, creation, production and post-production services of multimedia entertainment content.

35.     On November 2, 2022, the USPTO issued DCSW a registration U.S. Reg. No. 6,914,634 for the service mark **MIAMI SWIM WEEK®** in International Class 41, for entertainment in the nature of development, creation, production and post-production services of multimedia entertainment content.

**Paraiso's Application In USPTO For Miami Swim Fashion Week Service Mark**

9.     On May 30, 2021 (12 days after DCSW filed its **MIAMI SWIM WEEK®** application), Paraiso filed U.S. Application Serial No. 90/743,813 for the Miami Swim Fashion Week service mark in International Class 41 for Entertainment services in the nature of

development, creation, production and post-production services of multimedia entertainment content; Entertainment services in the nature of development, creation, production, distribution, and post-production of fashion shows and presentations; Entertainment in the nature of fashion shows.

10.     Paraiso concedes it is aware of DCSW's use of its **MIAMI SWIM WEEK®** mark prior to the date Paraiso filed an application for the said Miami Swim Fashion Week mark.

11.     According to the State of Florida's official website for the Florida Department of State Division of Corporations, Paraiso has never filed an application to register Miami Swim Fashion Week as a fictious name doing business as "Miami Swim Fashion Week" or as a Florida trademark.

12.     According to the State of Florida's official website for the Florida Department of State Division of Corporations, Paraiso has never filed an application to register Miami Swim Fashion Week as a fictious name doing business as "Miami Swim Fashion Week" or as a Florida trademark.

13.     According to the State of Florida's official website for the Florida Department of State Division of Corporations, Paraiso's only active fictitious name registrations in the state of Florida are for "Paraiso Miami Beach" and "Serbia RC".  There are no Florida trademarks filed by Paraiso for Miami Swim Week or Miami Swim Fashion Week.

14.     Notably, according to the State of Florida's official website for the Florida Department of State Division of Corporations, DCSW has a fictitious name registration in the state of Florida for "Miami Swim Week".

15.     According to the United States Patent and Trademark Office, Paraiso has never attempted to register Miami Swim Fashion Week as a service mark or trademark in the USPTO

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

prior to filing its U.S. Application Serial No. 90/743,813 which was after DCSW filed its **MIAMI SWIM WEEK®** application in the USPTO.

16.    According to records on <u>archive.org</u>, Paraiso has not been using the Miami Swim Fashion Week service mark anywhere since as early as March 18, 2008.

17.    According to records in the USPTO TSDR Case Viewer, Paraiso submitted an invitation for a fashion show it produced for a designer with the fashion show date of July 17, 2015 to the USPTO in support of its application to register Miami Swim Fashion Week as a service mark. Paraiso also submitted screenshots of its then <u>Instagram</u> handle funkshionfw with a bio and posts, none of which show Paraiso's use of the mark Miami Swim Fashion Week. The words in its <u>Instagram</u> handle bio state FUNKSHION: FASHION WEEK MIAMI SWIM July 15-20, Miami Beach instead of Miami Swim Fashion Week.

18.    Upon information and belief, although Paraiso (then known as Funkshion) may have produced a fashion show for a designer, its use of the words Miami Swim Fashion Week on the invitation without more evidence of use does not establish that Paraiso was using Miami Swim Fashion Week as a service mark in commerce.

19.    As part of its application, Paraiso's owner Aleksander Stojanovic declared that "[t]he mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application". However, according to records from <u>archive.org</u>, there is no mention of the words Miami Swim Fashion Week on Paraiso's <u>paraisomiamibeach.com</u> website on any captures over the course of several years preceding Paraiso's application to register Miami Swim Fashion Week as a service mark. Paraiso has therefore has committed fraud upon the USPTO by declaring that the Miami Swim Fashion

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

Week mark was in use in commerce as of March 30, 2021 because it was not in use.  See, *e.g.*, **Exhibits B** - **H**.

20.     Upon information and belief, Paraiso has never used Miami Swim Fashion Week as a service mark, the 2015 invitation it submitted to the USPTO (if authentic) represents a token use, and Paraiso abandoned whatever rights it may have had in Miami Swim Fashion Week as a service mark due to non-use.

9.     On April 3, 2023, an Examiner of Paraiso's U.S. Application Serial No. 90/743,813 for Miami Swim Fashion Week issued an Office Action refusing registration because the filing date of DCSW's application for its **MIAMI SWIM WEEK®** service mark preceded the filing date of Paraiso's application for Miami Swim Fashion Week.

10.     In response to the Examiner's refusal, Paraiso's Authorized Signatory filed a response on April 4, 2023 requesting the Examiner to suspend action on Paraiso's U.S. Application Serial No. 90/743,813 application for Miami Swim Fashion Week pending the outcome of the Cancellation Proceeding No. 92081190 filed by Paraiso against DCSW's **MIAMI SWIM WEEK®** registration.

**Paraiso's Application In USPTO For Miami Swim Week Service Mark**

11.     On May 31, 2021 (13 days after DCSW filed its **MIAMI SWIM WEEK®** application), Paraiso filed U.S. Application Serial No. 90/744,864 for the Miami Swim Week service mark in International Class 41 for Entertainment services in the nature of development, creation, production and post-production services of multimedia entertainment content; Entertainment in the nature of fashion shows.

12.     Paraiso concedes it is aware of DCSW's use of its **MIAMI SWIM WEEK®** mark prior to the date Paraiso filed an application for the said Miami Swim Week mark.

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

13.     According to the State of Florida's official website for the Florida Department of State Division of Corporations, Paraiso has never filed an application to register Miami Swim Week as a fictious name doing business as "Miami Swim Week" or as a Florida trademark.

14.     According to the State of Florida's official website for the Florida Department of State Division of Corporations, Paraiso has never filed an application to register Miami Swim Week as a fictious name doing business as "Miami Swim Week" or as a Florida trademark.

15.     According to the State of Florida's official website for the Florida Department of State Division of Corporations, Paraiso's only active fictitious name registrations in the state of Florida are for "Paraiso Miami Beach" and "Serbia RC."  There are no Florida trademarks filed for Miami Swim Week or Miami Swim Fashion Week.

16.     Notably, according to the State of Florida's official website for the Florida Department of State Division of Corporations, DCSW has a fictitious name registration in the state of Florida for "Miami Swim Week".

17.     According to the United States Patent and Trademark Office, Paraiso has never attempted to register Miami Swim Week as a service mark or trademark in the USPTO prior to filing its U.S. Application Serial No. 90/744,864 which was after DCSW filed its **MIAMI SWIM WEEK®** application in the USPTO.

18.     According to records from archive.org, Paraiso has not been using the Miami Swim Week service mark as early as March 1, 2009 and therefore has committed fraud upon the USPTO by claiming the same in its application.  See **Exhibit B** showing a screenshot of archive.org capture of Paraiso's former website funkshion.com on March 2, 2009. The capture which makes no mention of Miami Swim Week and instead references Funkshion Fashion Week Miami Beach.

19.     According to records from archive.org, Paraiso has not been using the Miami Swim Week service mark in interstate commerce as early as June 1, 2009 and has committed fraud upon

the USPTO by claiming the same in its application.   See **Exhibit C** showing a screenshot of archive.org capture of Paraiso's former website funkshion.com on July 13, 2009.   The capture shows some changes from the prior capture but still makes no mention of Miami Swim Week and instead references Funkshion Fashion Week Miami Beach.

20.      Fast forward to 2018, according to records from archive.org, Paraiso still made no mention of Miami Swim Week on its former website.   See **Exhibit D** showing a screenshot of archive.org capture of Paraiso's former website funkshion.miami on August 6, 2018 which mentions "FUNKSHION" and "PARAISO FASHION FAIR".



Finally, in 2021, according to records from archive.org, the phrases "Miami Swim Week", "miami swim week", and "miami's swim week" were mentioned on Paraiso's former website funkshion.miami and current website paraisomiamibeach.com.   See **Exhibit   E** showing a screenshot of archive.org capture of Paraiso's former website funkshion.miami on June 13, 2021 which merely mentions "Miami Swim Week" as an event it has provided production services for in its portfolio list.  See **Exhibit F** showing a screenshot of archive.org capture of Paraiso's current website paraisomiamibeach.com as it appeared on **March 14, 2021** (one day prior to the filing date of DCSW's application for its **MIAMI SWIM WEEK®** mark in the USPTO) which merely mentions the phrase "miami swim week" within a sentence in all lower-case letters.   See

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

**Exhibit G** showing a screenshot of archive.org capture of Paraiso's current website paraisomiamibeach.com as it appeared on **June 5, 2021** (after Paraiso's March 31, 2021 filing date of its application for Miami Swim Week in the USPTO) which merely mentions the phrase "Miami's swim week" within a sentence and with only the first letter of "Miami's" capitalized and an apostrophe added to the word "Miami".  Notably, Paraiso also added the word "Event is trademarked" even though it did not and still does not have a registered trademark.

21.     The records from archive.org of all three of Paraiso's websites over time funkshion.com, funkshion.miami, and paraisomiamibeach.com reveal that Paraiso did not begin using Miami Swim Week as a service mark until in 2022, which was after DCSW began using the **MIAMI SWIM WEEK®** mark in interstate commerce and DCSW had already acquired trademark rights in the same.

22.     On February 23, 2022, an Examiner of Paraiso's U.S. Application Serial No. 90/744,864 for Miami Swim Week issued an Office Action refusing registration because the specimen submitted by the Paraiso did not show a direct association between the Miami Swim Week mark and the services and failed to show the applied-for mark as actually used in commerce with the identified services listed in its application.

23.     The Examiner also issued a potential refusal of registration because the filing date of DCSW's application for its **MIAMI SWIM WEEK®** service mark preceded the filing date of Paraiso's application for Miami Swim Week.

24.     In response to the Examiner's refusal, Paraiso's declarant filed a response almost 6 months later on August 15, 2022, which included three substitute specimens and a request for the Examiner to suspend action on Paraiso's U.S. Application Serial No. 90/744,864.

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

25.     The substitute specimens were submitted by the declarant along with the following statement: **"The substitute (or new, or originally submitted, if appropriate) specimen(s) was/were in use in commerce at least as early as the filing date of the application"**.

26.     Paraiso's submission of the substitute specimens included the following Declaration signed by Paraiso's declarant: **"DECLARATION: The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that, if the applicant submitted the application or allegation of use (AOU) unsigned, all statements in the application or AOU and this submission based on the signatory's own knowledge are true, and all statements in the application or AOU and this submission made on information and belief are believed to be true."**

27.     Paraiso's substitute specimens included three screenshots of a webpage from Paraiso's website paraisomiamibeach.com with the words "PARAISO Miami Beach (A.K.A. Swim Fashion Week ®) is the official umbrella for Miami Swim Week . . ." and "PARAISO Miami Beach widely known as Miami Swim Week has been in the Swimwear and Resort wear marketing space for over 16 years. . ."  See Paraiso's three substitute specimens submitted to the USPTO on August 15, 2022 showing what it declared was in existence as early as May 31, 2021:

[Specimens begin on next page . . . ]





*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*



28.    According to the capture of Paraiso's <u>paraisomiamibeach.com</u> website on <u>archive.org</u>, the wording reflected in the submitted specimens did not exist as early as May 31, 2021 on Paraiso's website.   Instead, as of **March 14, 2021**, before Paraiso's May 31, 2021 application filing date, the wording above the photograph fails to mention "Miami Swim Week" (with the first letters capitalized) anywhere and the wording underneath "Our EVENT" says "miami swim week" as part of a sentence in all lower case letters.  Notably, the photograph of the woman swimming underwater as reflected on <u>archive.org</u> is different than the two different photographs of models not in the water as reflected in Paraiso's substitute specimen.  Furthermore, as of **June 5, 2021**, after Paraiso's May 31, 2021 application filing date, the wording above the photograph fails to mention "Miami Swim Week" (with the first letters capitalized) anywhere and the wording underneath "Our EVENT" says "Miami's swim week" and "Event is trademarked" and the same photograph of the woman swimming underwater which is different than the two different photographs reflected in Paraiso's substitute specimen.  See

**Exhibit H** showing the screenshots of archive.org captures of Paraiso's paraisomiamibeach.com as it appeared on **March 14, 2021** and **June 5, 2021 (**after Paraiso's May 31, 2021 application filing date) which look entirely different than Paraiso's three substitute specimens submitted to the USPTO on August 15, 2022 showing what it declared was in existence as early as May 31, 2021.

29.    Over one year later, sometime in August of 2022 right before submitting its substitute specimens to the USPTO, Paraiso made an update to its website to reflect the wording and photographs appearing in the substitute specimens that submitted to the USPTO.   Paraiso misrepresented its use in commerce to the USPTO by declaring the substitute specimens it submitted as being in use in commerce at least as early as the filing date of the application on May 31, 2021 when they had in fact *not* been in use as early as May 31, 2021.  See **Exhibit I** showing the screenshots of archive.org captures of Paraiso's paraisomiamibeach.com as it appeared on **August 1, 2022** and **September 6, 2022 (**after Paraiso's May 31, 2021 application filing date) which demonstrate that Paraiso updated website to show use of Miami Swim Week right before it submitted its three substitute specimens on August 15, 2022 and declared they were in existence as early as May 31, 2021.

**Paraiso's Petition for Cancellation of DCSW's MIAMI SWIM WEEK® Registration**

30.    In its continued effort to confuse and deceive the public and the United States Federal Government, Paraiso filed a Petition for Cancellation of DCSW's US Reg. No. 6,914,634 with the Trademark Trial and Appeal Board ("TTAB") on December 12, 2022, seeking to cancel DCSW's **MIAMI SWIM WEEK®**  registration on the basis that Paraiso allegedly had priority of use and there was a likelihood of consumer confusion.

31.    Over two years later, on February 27, 2025 of this year, in error, the TTAB granted the Cancellation  Proceeding No. 92081190 in Paraiso's favor, finding that Paraiso had established

priority of use of the common law marks Miami Swim Week and Miami Swim Fashion Week for the services with which they are used and that DCSW's **MIAMI SWIM WEEK®** mark creates a likelihood of confusion with Paraiso's purported Miami Swim Week common law mark. Consequently, DCSW submits its timely request for *de novo* review under 15 U.S.C. § 1071(b)(1).

32.     The decision of the TTAB is erroneous because, *inter alia*:

a       Paraiso misrepresented its use in commerce to the USPTO and TTAB by failing to notify the TTAB of its misrepresentation regarding its use of the Miami Swim Fashion Week mark at the time of filing its application Serial No. 90,743/813 and the petition to cancel DCSW's **MIAMI SWIM WEEK®** registration should have been barred due to unclean hands as a result.

b       Paraiso misrepresented its use in commerce to the USPTO and TTAB by failing to notify the TTAB of its misrepresentation regarding its alleged first use dates in its application and submitted substitute specimen's existence, or lack thereof, as of its application filing date and the petition to cancel DCSW's **MIAMI SWIM WEEK®** registration should have been barred due to unclean hands as a result.

c       The TTAB relied upon third party publications (that it did not reject as hearsay) and unverified testimony of Paraiso's representative Aleksandar Stojanovic, who has made a plethora of misrepresentations to the USPTO and the TTAB, as the basis for its determination of Paraiso's prior use of Miami Swim Week as a service mark.

d       The TTAB erred in not considering DCSW's receipt of the Key to the City of Miami Beach is a powerful symbol of the **MIAMI SWIM WEEK®** mark's recognition and distinctiveness within the community, a "proclamation" prepared by the City of Miami Beach in support of DCSW, or DCSW's social media

evidence.  The TTAB also erred in not considering DCSW's financial statements provided to demonstrate its substantial investment in its **MIAMI SWIM WEEK®** brand.

e       The TTAB erred in deciding that Paraiso was using the Miami Swim Week mark based on the sparse isolated instances of sporadic and unverified use that Paraiso submitted to the record in the TTAB proceeding was sufficient to show prior use. Regardless, any prior use that Paraiso may have made certainly wasn't continuous and they abandoned any rights they may have had.

**Paraiso and Funkshion's Informational, Misleading, and Infringing Uses
of the MIAMI SWIM WEEK® Mark**

33.      Upon information and belief, prior to Paraiso's application for the Miami Swim Week service mark in the USPTO, no third parties have acknowledged that Paraiso is the originator of Miami Swim Week.

34.      Upon information and belief, any uses of the words Miami Swim Week or Miami Swim Fashion Week by Paraiso prior to the filing of its application in 2021 were to convey informational matter and not to establish trademark rights.

35.      Upon information and belief, even if Paraiso was able to establish common law rights in the marks Miami Swim Week or Miami Swim Fashion Week, any instance of prior use by Parisio was not continuous, resulting in the abandonment of the rights.

36.      According to records from archive.org, Paraiso made updates to the content on its paraisomiamibeach.com website on or around the date that Paraiso filed its Miami Swim Week service mark application in clear attempts by Paraiso to misrepresent its entitlement to rights in DCSW's **MIAMI SWIM WEEK®** mark. These misrepresentations continue through today. According to archive.org, Paraiso began adding the ™ symbol to the words Miami Swim Week™

on its website in 2024 after DCSW had already been using the ™ and ® symbols for multiple years prior and *before* the TTAB issued its decision in the cancellation proceeding.

37.     In 2024, after DCSW had already been using the ™ and ® symbols for years prior and *before* the TTAB issued its decision in the cancellation proceeding, Paraiso also began using the ™ after the words "Miami Swim Week" on signage at events and on its social media.  See *e.g.,* a screenshot of Paraiso's <u>Instagram</u> post dated May 24, 2024 showing a photo of people standing in front of a banner at a Paraiso event with the words MIAMI SWIM WEEK™ and a screenshot of Paraiso's <u>Instagram</u> account as it appears as of the date of this filing, April 4, 2025, with the words MIAMI SWIM WEEK™ appearing in both Paraiso's <u>Instagram</u> name and bio, as well as on two pinned posts showing text overlay on an arial photograph of a the Miami coastline and on building signage.



*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*



**Paraiso and Funkshion's Other False Statements and Misleading Advertising**

38.    Although the TTAB erred in favor of cancelling DCSW's **MIAMI SWIM WEEK®** mark, the **MIAMI SWIM WEEK®** registration has not been cancelled by the USPTO and DCSW has statutory rights to request a Federal District Court's *de novo* review to reverse the TTAB's decision.

39.    Since the cancellation has not been finalized, Paraiso's application for registration of Miami Swim Week is still pending and has not been approved.   See attached screenshot captured as of the date of filing this Complaint of the USPTO's Trademark Search showing **MIAMI SWIM WEEK®** is still registered by DCSW and Paraiso has only a pending application. See also the attached screenshot captured as of the date of filing this Complaint of the Trademark

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

Search and Document Retrieval ("*TSDR*") showing that Paraiso's Miami Swim Week application remains suspended:





40.     Notwithstanding the unchanged status of DCSW's registration and Paraiso's applications in the USPTO, Paraiso and Funkshion's representatives Aleksandar Stojanovic and Natalija Dedic Stojanovic sent a cease and desist letter and emails to DCSW demanding that DCSW cease and desist all advertising, promotion and marketing activity with respect to its purported Miami Swim Week trademark with a threat of legal action against DCSW and copied DCSW's publicist on the communication.

41.     Upon information and belief, Paraiso and Funkshion have contacted and provided misleading information to the press, publications, and other third parties regarding their purported rights in DCSW's **MIAMI SWIM WEEK®** mark and misrepresentations regarding the TTAB's final decision and the legal status of DCSW's **MIAMI SWIM WEEK®** registration and both Paraiso and Funkshion's purported ownership of the **MIAMI SWIM WEEK®** mark.

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

42.     Upon information and belief, media outlets are publishing the information that Paraiso has provided to them in misleading and false articles on the Internet.  For example, see fashionunited.uk falsely announced that Paraiso had secured trademark rights and quotes statements made to it about the TTAB decision by Paraiso's representatives Natalija Dedic-Stojanovic and Aleksander Stojanovic.



See also, *e.g.*, the South Florida Business Journal at bizjournals.com with the exclusive headline "Paraiso Miami Swim Week wins trademark in legal dispute: 'A Major Victory'.





43.     Miamiswimtickets.com which sells tickets to swimwear shows has also posted content on its website referred to Paraiso as "the official trademark owner of 'Miami Swim Week'", that Paraiso "recently secured the official trademark rights to 'Miami Swim Week'", and that "the 'Miami Swim Week' trademark is now officially owned by the Paraiso." Miamiswimtickets.com also stated it is proud to continue supporting Paraiso Miami Swim Week and all the legitimate swimwear event producers creating runway show . . ." Miamiswimtickets.com also recommends designers to connect directly with Paraiso or other established producers listed on its site if they are interested in participating in the event.







44.     On April 2, 2025, Paraiso and Funkshion representative Natalija Dedic Stojanovic authored a newsletter entitled FOUNDER'S TAKE No. 6 that was emailed to a recipient along with a large photograph of Natalija Dedic Stojanovic.  The newsletter stated "PARAISO and its

parent company, FUNKSHION, have won in federal court, affirming our grandfather rights to the Miami Swim Week trademark," misrepresenting that they won in Federal court and their grandfather rights to the Miami Swim Week trademark.  The newsletter lists Paraiso Miami Swim Week at the top and both Paraiso Miami Swim Week and Funkshion Labs LLC at the bottom.  See **<u>Exhibit K</u>**.

45.     Paraiso is also selling tickets for Miami Swim Week through its website at paraisomiamibeach.com/tickets.

46.     Paraiso and Funkshion's actions have disrupted, interfered with, and halted DCSW's actual and prospective business relationships and contracts.

47.     Paraiso and Funkshion have a duty of care to DCSW and consumers to make truthful statements and not misrepresent material facts and source identification.

48.     Paraiso and Funkshion breached its duty of care to the DCSW and consumers by misrepresenting the status of DCSW's registered **MIAMI SWIM WEEK®** trademark and Paraiso and Funkshion's alleged rights in the same by falsely representing that Paraiso has recently secured trademark rights in the Miami Swim Week when in fact Paraiso's application is still pending. Thus, Paraiso falsely represented that Paraiso and Funkshion now have official ownership of the mark when DCSW still has a registered mark, creating a cloud of title in the mark.

49.     The fact that the DCSW still has a registered **MIAMI SWIM WEEK®** mark, that the Paraiso still does not have a registered Miami Swim Week mark, that Paraiso's U.S. Application Serial No. 90/744,864 for the service mark Miami Swim Week is still pending, and that this is a *de novo* review all demonstrate that the Paraiso and Funkshion have NOT won.

50.     All conditions precedent to filing this action have occurred or have been waived.

## COUNT I – FEDERAL TRADEMARK INFRINGMENT
## AGAINST PARAISO

51.    DCSW incorporates herein each and every allegation set forth in Paragraphs 1 through 50, as if fully set forth herein.

52.    Paraiso's marketing, advertising, and promotion of fashion show events in interstate commerce using a service mark that is substantially and confusingly similar and/or identical to DCSW's **MIAMI SWIM WEEK®** mark, without consent or authorization of DCSW,  is likely to cause confusion, to cause mistake, or to deceive consumers, and constitutes infringement of DCSW's service mark rights in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

53.    Upon information and belief, Paraiso was aware of DCSW's **MIAMI SWIM WEEK®** mark and Paraiso committed infringement in willful, flagrant disregard of DCSW's lawful rights.

54.    Paraiso's trademark infringement has caused and will continue to cause immediate and irreparable injury and damage to DCSW's business, reputation, and goodwill.  DCSW has no adequate remedy at law.

## COUNT II – FEDERAL TRADEMARK INFRINGMENT
## AGAINST FUNKSHION

55.    DCSW incorporates herein each and every allegation set forth in Paragraphs 1 through 50, as if fully set forth herein.

56.    Funkshion's marketing, advertising, and promotion of fashion show events in interstate commerce using a service mark that are substantially and confusingly similar and/or identical to DCSW's **MIAMI SWIM WEEK®** mark, without consent or authorization of DCSW, is likely to cause confusion, to cause mistake, or to deceive consumers, and constitutes

infringement of DCSW's service mark rights in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

57.     Upon information and belief, Funkshion was aware of DCSW's **MIAMI SWIM WEEK®** mark and Funkshion committed infringement in willful, flagrant disregard of DCSW's lawful rights.

58.     Funkshion's trademark infringement has caused and will continue to cause immediate and irreparable injury and damage to DCSW's business, reputation, and goodwill. DCSW has no adequate remedy at law.

### COUNT III – PARAISO'S FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND FALSE DESCRIPTION AND REPRESENTATION

59.     DCSW incorporates herein each and every allegation set forth in Paragraphs 1 through 51, as if fully set forth herein.

60.     Paraiso's marketing, advertising, and promotion of fashion show events using DCSW's **MIAMI SWIM WEEK®** mark, without consent or authorization of DCSW, constitutes unfair competition, a false designation of origin, and false description and representation of fact as to the origin of Paraiso's services in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61.     Upon information and belief, Paraiso's acts were done willfully and with fully knowledge of the falsity of such designations of origin with the express intent to cause confusion and to mislead and deceive the purchasing public.

62.     Paraiso's willful and unauthorized misuses of DCSW's **MIAMI SWIM WEEK®** mark has damaged DCSW in an amount to be determined at trial.

63.     Paraiso's unfair competition, false designation of origin, and false description and representation have caused and will continue to cause immediate and irreparable injury and

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

damage to DCSW's business, reputation, and goodwill until the Paraisos' unlawful conduct is enjoined. DCSW has no adequate remedy at law.

64.     Pursuant to 15 U.S.C. § 1117, DCSW is entitled to recover all of Paraiso's profits, DCSW's damages, and the costs of this action. The intentional nature of Paraiso's unlawful conduct also renders this an "exceptional case," entitling DCSW to enhanced damages and an award of attorney fees under 15 U.S.C. § 1117(a).

### COUNT IV – FUNKSHION'S FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND FALSE DESCRIPTION AND REPRESENTATION

65.     DCSW incorporates herein each and every allegation set forth in Paragraphs 1 through 50, as if fully set forth herein.

66.     Funkshion's marketing, advertising, and promotion of fashion show events using DCSW's **MIAMI SWIM WEEK®** mark, without consent or authorization of DCSW, constitutes unfair competition, a false designation of origin, and false description and representation of fact as to the origin of Paraiso's services in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

67.     Upon information and belief, Funkshion's acts were done willfully and with fully knowledge of the falsity of such designations of origin with the express intent to cause confusion and to mislead and deceive the purchasing public.

68.     Funkshion's willful and unauthorized misuses of DCSW's **MIAMI SWIM WEEK®** mark has damaged DCSW in an amount to be determined at trial.

69.     Funkshion's unfair competition, false designation of origin, and false description and representation have caused and will continue to cause immediate and irreparable injury and damage to DCSW's business, reputation, and goodwill until the Funkshion's unlawful conduct is enjoined. DCSW has no adequate remedy at law.

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

70.     Pursuant to 15 U.S.C. § 1117, DCSW is entitled to recover all of Funkshion's profits, DCSW's damages, and the costs of this action. The intentional nature of Funkshion's unlawful conduct also renders this an "exceptional case," entitling DCSW to enhanced damages and an award of attorney fees under 15 U.S.C. § 1117(a).

### COUNT V - DECLARATORY JUDGMENT
### AS TO MIAMI SWIM WEEK SERVICE MARK

71.     DCSW incorporates herein each and every allegation set forth in Paragraphs 1 through 50, as if fully set forth herein.

72.     Based on the facts set forth in the foregoing allegations, an actual controversy has arisen and now exists between the parties as to the ownership of DCSW's **MIAMI SWIM WEEK®** service mark and the entitlement to registration on the records of the USPTO.

73.     DCSW is the first bona fide user of the **MIAMI SWIM WEEK®** service mark in the United States.

74.     DCSW has a federally registered service mark for **MIAMI SWIM WEEK®** in IC 41 and Paraiso has a pending application for registration of Miami Swim Week mark in IC 41 in the USPTO.

75.     At present, DCSW is using **MIAMI SWIM WEEK®** in association with services in IC 41 in United States commerce and Paraiso is using Miami Swim Week with a ™ symbol in IC 41 in United States commerce.

76.     Under the circumstances, a judicial declaration is necessary and appropriate at this time so that the parties and others may determine their rights and duties under the laws at issue.

77.     DCSW therefore seeks a declaration from this Court that it is the owner of the **MIAMI SWIM WEEK®** service mark.

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

<u>COUNT VI</u>
**CANCELLATION OF PARAISO'S SERVICE MARK APPLICATION FOR**
<u>MIAMI SWIM WEEK</u>

9.      DCSW incorporates herein each and every allegation set forth in Paragraphs 1 through 50, as if fully set forth herein.

10.      Paraiso submitted U.S. Application Serial No. 90/744,864 to register the MIAMI SWIM WEEK service mark with the USPTO in International Class 41 for Entertainment services in the nature of development, creation, production and post-production services of multimedia entertainment content; Entertainment in the nature of fashion shows.

78.      Paraiso's application should not be granted because DCSW is the first user of **MIAMI SWIM WEEK®** as a service mark for these services in United States commerce.

79.      Paraiso's application should not be granted because Paraiso never made use of Miami Swim Week as a service mark in the ordinary course of trade prior to DCSW's first use of **MIAMI SWIM WEEK®** as a service mark.

80.      Paraiso's application should not be granted because any use of the words Miami Swim Week by Paraiso prior to DCSW's use of **MIAMI SWIM WEEK®** as a service mark was merely to convey an informational message and not trademark use.

81.      According to archive.org records, Paraiso knew at the time it submitted its application that DCSW had senior rights to the mark in the U.S. and thus made fraudulent statements to the USPTO in its application "... to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true."

33                          *Law Offices of Elysa Galloway with*
                          *Charlotte Towne Law*
                          *The Mermaid Lawyer®*

82.     Paraiso knew at the time it submitted its application to the USPTO that its declared first use dates of the MIAMI SWIM WEEK anywhere and in commerce were false.

83.     Paraiso knew at the time it submitted its substitute specimens that it was submitting fraudulent specimens to the USPTO in support of its application.

84.     This Court has authority to determine the right to registration of a service mark, and to order the cancellation of an application under Section 37 of the Lanham Act, 15 U.S.C. § 1119 and 15 U.S.C. § 1064.

85.     DCSW as first user of the **MIAMI SWIM WEEK®** mark therefore seeks cancellation of Paraiso's Application Serial No. 90/744,864, for fraud upon the USPTO pursuant to the Court's authority based in 15 U.S.C. §1119 and 15 U.S.C. § 1064 and because DCSW is the senior user of the **MIAMI SWIM WEEK®** mark.

**COUNT VII**
**CANCELLATION OF PARAISO'S SERVICE MARK APPLICATION FOR**
**MIAMI SWIM FASHION WEEK**

86.     DCSW incorporates herein each and every allegation set forth in Paragraphs 1 through 50, as if fully set forth herein.

87.     Paraiso submitted U.S. Application Serial No. 90/743,813 to register Miami Swim Fashion Week as a service mark with the USPTO in International Class 41 for Entertainment services in the nature of development, creation, production and post-production services of multimedia entertainment content; Entertainment services in the nature of development, creation, production, distribution, and post-production of fashion shows and presentations; Entertainment in the nature of fashion shows.

88.     Paraiso's application should not be granted because DCSW is the first user of its **MIAMI SWIM WEEK®** as a service mark for these services in United States commerce.

89.     Paraiso's application should not be granted because DCSW is the first user of its **MIAMI SWIM WEEK®** as a service mark for these services in United States commerce.

90.     Paraiso's application should not be granted because Paraiso never made good faith use of Miami Swim Fashion Week as a service mark in the ordinary course of trade prior to DCSW's first use of its **MIAMI SWIM WEEK®** as a service mark.

91.     Paraiso's application should not be granted because any use of the words Miami Swim Fashion Week by Paraiso prior to DCSW's use of **MIAMI SWIM WEEK®** as a service mark was merely to convey an informational message and not trademark use.

92.     According to archive.org records, Paraiso knew at the time it submitted its application that DCSW had senior rights to the **MIAMI SWIM WEEK®**  in the U.S. and thus made fraudulent statements to the USPTO in its application ". . .to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true."

93.     Paraiso knew at the time it submitted its application to the USPTO that its declaration regarding its use of Miami Swim Fashion Week as of the date of filing its application was false.

94.     This Court has authority to determine the right to registration of a service mark, and to order the cancellation of an application under Section 37 of the Lanham Act, 15 U.S.C. § 1119 and 15 U.S.C. § 1064.

95.     DCSW as first user of the **MIAMI SWIM WEEK®** mark therefore seeks cancellation of Paraiso's Application Serial No. 90/744,864 for Miami Swim Fashion Week for

fraud upon the USPTO pursuant to the Court's authority based in 15 U.S.C. §1119 and 15 U.S.C. § 1064 and because DCSW is the senior user of the **MIAMI SWIM WEEK®** mark.

### COUNT VIII – DE NOVO REVIEW OF TTAB DECISION REGARDING DCSW'S REGISTRATION FOR MIAMI SWIM WEEK® PURSUANT TO 15 U.S.C. § 1071(b)(1)

96.    DCSW incorporates herein each and every allegation set forth in Paragraphs 1 through 50, as if fully set forth herein.

97.    DCSW submits that the TTAB erroneously concluded that Paraiso had established priority of use of the common law marks Miami Swim Week and Miami Swim Fashion Week for the services with which they are used and that DCSW's **MIAMI SWIM WEEK®** mark creates a likelihood of confusion with Paraiso's purported Miami Swim Week common law trademark

98.    Paraiso misrepresented its use in commerce to the USPTO and TTAB by failing to notify the TTAB of its misrepresentation regarding its use of the Miami Swim Fashion Week mark as of its Miami Swim Fashion Week application filing date.

99.    Paraiso misrepresented its use in commerce to the USPTO and TTAB by failing to notify the TTAB of its misrepresentation regarding its alleged first use dates in its Miami Swim Week application and its substitute specimens' existence, or lack thereof, as of its Miami Swim Week application filing date.

100.    The TTAB relied upon third party publications and self-serving testimony of Paraiso's representative Aleksandar Stojanovic as the basis of its determination of prior use of Miami Swim Week as a service mark by Paraiso.

101.    Any mention of Miami Swim Week by Paraiso prior to DCSW's use of its **MIAMI SWIM WEEK®** as a service mark was merely an informational reference and not an attempt to claim ownership of Miami Swim Week or brand recognition as Miami Swim Week.

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

102. The TTAB's decision fails to account for the extensive investments made by DCSW in promoting and protecting its **MIAMI SWIM WEEK®** mark. The **MIAMI SWIM WEEK®** mark is a source identifier of DCSW that has been built up through consistent and substantial actual use, promotional activities, and significant commercial efforts.

103. Paraiso's unauthorized use of DCSW's **MIAMI SWIM WEEK®** mark, and with and without the ™ symbol is compromising the integrity and value of DCSW's brand in which DCSW is actively working to protect.

104. DCSW has made significant efforts to protect its **MIAMI SWIM WEEK®** mark through enforcement of its rights and investment in marketing and legal strategies.

105. DCSW has ensured and continuously ensures that the mark remains strong and distinct in ongoing efforts to protect the integrity of its **MIAMI SWIM WEEK®** mark are vital for maintaining its exclusivity, market position, and recognition.

106. The continuous and ongoing investments made by DCSW into the branding and protection of its **MIAMI SWIM WEEK®** mark are essential to its continued success and the broader reputation of Miami within the fashion industry.

107. DCSW has worked and continues to create a distinct and internationally recognized brand, and any infringement of its service mark undermines the substantial goodwill that has been built over the years.

108. DCSW has demonstrated and continues to demonstrate real, actual, and constructive use of its **MIAMI SWIM WEEK®** mark through substantial investments in promotional products, marketing campaigns, and brand-building efforts.

109. Paraiso knew of DCSW's use of its **MIAMI SWIM WEEK®** mark as early as 2020 and Paraiso's Petition for Cancellation should be barred by laches.

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

110.    The TTAB decision of February 27, 2025 should be vacated and Paraiso's Petition for Cancellation of U.S. Trademark Registration No. 6,914,634 for DCSW's **MIAMI SWIM WEEK®** mark denied.

## **PRAYER FOR RELIEF**

WHEREFORE, DCSW prays for relief as follows:

a.    That the Court vacate the Trademark Trial and Appeal Board's February 27, 2025, decision in the matter of *Funkshion Productions v. DCSW Group*, Cancellation Proceeding No. 92081190, referenced herein, pursuant to 15 U.S.C. § 1071(b).

b.    That the Court order the United States Patent and Trademark Office to deny Paraiso's Petition for Cancellation of U.S. TM. Reg No. 6,914,634, pursuant to 15 U.S.C. § 1119.

c.    Paraiso and Funkshion, and each of their respective officers, agents, servants, employees, attorneys and all others in active concert or participation with Paraiso and Funkshion, jointly and severally, be enjoined and restrained during the pendency of this action and permanently thereafter from:

   i.    using the **MIAMI SWIM WEEK** mark or any other mark or designation that is confusingly similar to the **MIAMI SWIM WEEK** mark; and

   ii.   performing any other acts which are likely to lead the public to believe that Paraiso and Funkshion's services or products are in any manner licensed, sponsored, approved or authorized by DCSW or

which dilute the distinctive quality of DCSW's **MIAMI SWIM WEEK®** mark.

d.     Paraiso and Funkshion be ordered to pay DCSW all damages suffered by reason of Paraiso and Funkshion's wrongful acts as set forth in this Complaint, pursuant to 15 U.S.C. §§ 1117(a).

e.     The Court award DCSW three times the damages suffered by reason of the wrongful acts of Paraiso and Funkshion as set forth in this Complaint, pursuant to 15 U.S.C. §§ 1117(a).

f.     Paraiso and Funkshion be ordered to pay DCSW all profits realized by Paraiso and Funkshion by reason of Paraiso and Funkshion' wrongful acts as set forth in this Complaint, pursuant to 15 U.S.C. §§ 1117(a).

g.     Paraiso and Funkshion be ordered to pay DCSW the costs of this action and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1117(a).

h.     Paraiso and Funkshion be directed to identify and destroy all infringing and unfairly competing materials, including but not limited to Paraiso and Funkshion's infringing and unfairly competing products, and all printed material, packaging and advertising bearing colorable imitations of the **MIAMI SWIM WEEK** mark with the ® symbol, with the ™ symbol, or without any symbol.

i.     Paraiso and Funkshion be required to file with the Court and serve on DCSW a written report under oath setting forth in detail the manner of their compliance with the terms of this Court's order in accordance with 15 U.S.C. § 1116.

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

j.     Paraiso and Funkshion, their agents, servants, employees, franchisees, licensees, attorneys and all others, be enjoined and restrained, during the pendency of this action as preliminary injunction and permanently thereafter from:

   i.    Using, copying or otherwise exploiting the **MIAMI SWIM WEEK** mark and marketing content containing or referencing the mark with the ® symbol, with the ™ symbol, and without any symbol;

   ii.    Using, disclosing, converting, appropriating, retaining, selling, transferring or copying any property of DCSW;

   iii.    Doing any other act or thing likely to, or calculated to, induce the belief that Paraiso and Funkshion's business is in any way affiliated, connected or associated with DCSW, or DCSW's business;

   iv.    Doing any other act or thing likely to, or calculated to, induce the belief that Paraiso and Funkshion hold rights in the **MIAMI SWIM WEEK** mark.

   v.    Doing any other act or thing likely to, or calculated to, induce the belief that DCSW wrongfully used or registered the **MIAMI SWIM WEEK** mark.

i.     Paraiso and Funkshion, their agents, servants, employees, franchisees, licensees, attorneys and all others be required to deliver for destruction all marketing materials, including but not limited to letterhead, business cards, signs, prints, packages, brochures, wrappers, receptacles, forms, files, advertisements, banners, step and repeats, backdrops, digital assets, social

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

media, streaming, mobile ads, video content, and the like in their possession or control bearing the **MIAMI SWIM WEEK** mark with the ® symbol, with the ™ symbol, and without any symbol, and any other reproduction, counterfeit, copy or colorable imitation of the **MIAMI SWIM WEEK** mark with the ® symbol, with the ™ symbol, and without any symbol.

j.  Paraiso and Funkshion be required to pay DCSW the costs of this action.

k.  Paraiso and Funkshion remove all instances of the **MIAMI SWIM WEEK** mark from their websites, social media, newsletters, product listings, service listings, or anywhere else Paraiso and Funkshion used the **MIAMI SWIM WEEK** mark with the ® symbol, with the ™ symbol, and without any symbol to falsely market Paraiso and Funkshion's services or rights in the **MIAMI SWIM WEEK** mark.

l.  Paraiso and Funkshion issue retractions of the press releases, newsletters, posts, interviews, and announcements they provided to publications and other third parties regarding or relating to the TTAB's decision in the Cancellation Proceeding No. 92081190 and their purported rights in the **MIAMI SWIM WEEK** mark.

m.  DCSW to have such other and further relief as this Court deems just, fair, and equitable.

*Law Offices of Elysa Galloway with*
*Charlotte Towne Law*
*The Mermaid Lawyer®*

## JURY DEMAND

DCSW hereby demands a trial by jury on all claims so triable.

Dated: April 4, 2025                Respectfully submitted,

**CHARLOTTE TOWNE LAW**

By: <u>s/ *Charlotte Towne*</u>
     Charlotte Towne (FBN: 64096)
     ***The Mermaid Lawyer* ®**
     <u>legal@charlottetownelaw.com</u>
     120 E Oakland Park Blvd
     Suite 105
     Fort Lauderdale, FL 33334-1106
     Office: (954) 306-6624

     and,

**LAW OFFICES OF ELYSA GALLOWAY**

By: <u>/s/ *Elysa Galloway*</u>
     ELYSA GALLOWAY (FBN: 1022194)
     <u>elysa@elysagallowaylaw.com</u>
     PO Box 5131
     Lighthouse Point, FL 33074-5131
     Office: (954) 998-3828

**ATTORNEYS FOR PLAINTIFF,**
**DCSW GROUP LLC**